UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VALERIE R.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-49 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Valerie R., on February 2, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Valerie R., filed an application for Disability Insurance Benefits on September 19, 2014, alleging a disability onset date of February 1, 2012. (Tr. 10). The claim was denied initially on October 30, 2014, and upon reconsideration on January 15, 2015. (Tr. 10). On March 12, 2015, Valerie R. filed a written request for a hearing pursuant to 20 CFR § 416.1429. (Tr. 10). The hearing was held on January 12, 2017, before Administrative Law Judge (ALJ) Michelle Whetsel. (Tr. 10). Vocational Expert (VE) Thomas A. Gresik appeared at the hearing. (Tr. 10). The ALJ issued an unfavorable decision on May 2, 2017. (Tr. 10-19). Valerie R. then filed this *pro se* petition for judicial review on February 2, 2018.

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Valerie R. had not engaged in substantial gainful activity during the

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

period from her alleged onset date of February 1, 2012 through her date last insured of September 30, 2014. (Tr. 12). The ALJ noted that Valerie R. worked after the alleged disability onset date, but that work activity did not rise to the level of substantial gainful activity. (Tr. 12).

At step two, the ALJ determined that Valerie R. had the following severe impairments: personality disorder, unspecified trauma and stressor related disorder, and obesity. (Tr. 13). The ALJ found that Valerie R.'s severe impairments imposed more than minimal limitations on her ability to perform basic work-related activities. (Tr. 13). Also, the ALJ found that Valerie R. had the following nonsevere impairments: degenerative disc disease at C5-C6 with at least mild central canal and foraminal narrowing, spondylosis and facet arthrosis of the lower back, right shoulder complaints, and right eye blindness. (Tr. 13). Additionally, the ALJ noted that Valerie R. alleged PTSD but that no medical evidence supported the diagnosis. (Tr. 13). Therefore, the ALJ found that Valerie R.'s alleged PTSD was a nonmedically determinable impairment. (Tr. 13).

At step three, the ALJ concluded that Valerie R. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13). The ALJ considered whether the severity of Valerie R.'s mental impairments met or medically equaled the criteria of Listings 1.02, 1.04, 12.08, or 112.15. (Tr. 13). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves.

(Tr. 13). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme

2

limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 13). The ALJ found that Valerie R. had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; mild limitations concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing herself. (Tr. 13-14). Because Valerie R.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria were not satisfied. (Tr. 14). Additionally, the ALJ determined that Valerie R. did not satisfy the paragraph C criteria. (Tr. 14).

After consideration of the entire record, the ALJ then assessed Valerie R.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could never climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs, and could occasionally balance, stoop, kneel, crouch and crawl; she could frequently reach in all directions, including overhead with her right upper extremity and could have occasional interaction with coworkers, supervisors and the general public.

(Tr. 14). The ALJ explained that in considering Valerie R.'s symptoms she followed a two-step process. (Tr. 15). First, she determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Valerie R.'s pain or other symptoms. (Tr. 15). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Valerie R.'s functioning. (Tr. 15).

After considering the evidence, the ALJ found that Valerie R.'s medically determinable impairments reasonably could be expected to cause all of the alleged symptoms. (Tr. 15). However, the ALJ concluded that Valerie R.'s statements concerning the intensity, persistence,

3

and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15).

At step four, the ALJ determined that Valerie R. had no past relevant work. (Tr. 17). Considering Valerie R.'s age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that she could perform, including office helper (298,000 jobs nationally), routing clerk (69,000 jobs nationally), and checker (75,000 jobs nationally). (Tr. 18). The ALJ found that Valerie R. had not been under a disability, as defined in the Social Security Act, any time from February 1, 2012, the alleged onset date, through September 30, 2014, the date last insured. (Tr. 18).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive"); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence"). Courts have defined substantial evidence as such relevant "evidence as a reasonable mind might accept to support such a conclusion." ***Zoch v. Saul***, 2020 WL 6883424, at *3 (7th Cir. Nov. 24, 2020); ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019); ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act.  The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**.  The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**.  The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**.  If she is, the claimant is not disabled and the evaluation process is over.  If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments).  Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**.  If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling.  However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work.  If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**.  However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R.**

5

**§ 404.1520(f);** *see Biestek v. Berryhill,* 139 S. Ct. 1148 (2019) (upon the request of a disability benefits applicant, a vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

In her *pro se* petition for review, Valerie R. broadly argues that the ALJ erred in finding that she was not under a disability and therefore not entitled to disability insurance benefits. While most of Valerie R.'s petition consists of irrelevant arguments, such as harassment by past coworkers, she does address the February 24, 2017 findings of Dr. Stephen Kennedy, a consultative examiner. Specifically, she challenges the little to no weight the ALJ gave to Dr. Kennedy's findings.

Valerie R. saw Dr. Kennedy on February 24, 2017 for a Social Security Disability Determination Consultative Exam. (Tr. 415-418). Valerie R. told Dr. Kennedy that she had back and neck pain that had gotten progressively worse over the years. (Tr. 415). Dr. Kennedy noted that Valerie R. reported "insidious onset of neck spasms and decreased ability to use her right arm has been noted with pain in her left lower back radiating to her bilateral legs making it very difficult for her to walk." (Tr. 415). She stated that prolonged sitting and standing was very uncomfortable, therefore she spent most of her time laying down. (Tr. 415). She also stated that she was unable to do laundry and activities associated with daily living. (Tr. 415).

Dr. Kennedy found that Valerie R. had a bilaterally antalgic gate, walked much slower than normal, held a cane in her right hand, and without the cane she would be at risk of falling. (Tr. 416). Dr. Kennedy also found that Valerie R. could not perform tandem walk, heal walk, or toe walk. (Tr. 416). He stated that he would not advise Valerie R. to engage in further testing due to her risk of falling. (Tr. 416). As to her cervical, thoracic, and lumber spine, Dr. Kennedy found that Valerie R. had no midline tenderness of spinous processes or vertebral bodies but did

6

have a decreased range of motion. (Tr. 417). Dr. Kennedy found that she had no joint swelling or skin abnormalities. (Tr. 417). However, Dr. Kennedy made the following findings: degenerative changes bilaterally in her extremities; a normal pinch and grip; a normal sensory exam; grossly intact cervical nerves II through XI; muscle strength of 5/5 reflexes; 2+; and a normal sensory exam. (Tr. 417). Dr. Kennedy concluded that Valerie R. was not able to perform fine and gross movements effectively on a sustained basis and that she frequently was tearful upon range of motion during the exam. (Tr. 417).

Ultimately, Dr. Kennedy found the following:

> "[Valerie R.] appear[ed] to be able to hear and speak in a relatively normal manner. Appear[ed] to be able to understand, remember, sustain concentration, persist and socially interact. She would have difficulty or impossibility with climbing stairs, lifting, carrying, walking or standing for an extended period of time. The level of pain [she] [wa]s experiencing m[ight] very well interfere with her ability to concentrate and do work and gainfully obtain and keep employment. [He] [] recommend[ed] [that] [] [she] follow up [sic] with primary care physician and selective specialists given the above finding. She was counseled on cessation of smoking. Treatment of PTSD [wa]s recommended."

(Tr. 417-418).

The ALJ reasoned, and the Commissioner reiterates, that Dr. Kennedy's opinion was given little weight because "the comments regarding [Valerie R.'s] ability to remember, understand, sustain, persist and interact with others [wa]s best left a mental health professional …" (Tr. 17). The ALJ also stated that the record, though admittedly very limited, did not support Dr. Kennedy's comments about Valerie R.'s physical limitations. (Tr. 15, 17). The ALJ noted, "there were some inconsistencies with [] [a psychological] consultative examination taken around the same time." (Tr. 17). Specifically, "during the psychological consultative examination, she was not using a cane and her gait was normal." (Tr. 17). Additionally, the ALJ said "the other evidence in the record did not indicate [that] [Valerie R.] had a regular and

7

consistent impaired gait, strength or sensation … [and] the diagnostic testing reveal[ed] more of a mild to moderate findings and [Valerie R.] never underwent surgery, injection therapy or physical therapy." (Tr. 17).

"When an ALJ denies benefits, [s]he must build an accurate and logical bridge from the evidence to her conclusion … " ***Jordan P. v. Saul***, 2020 WL 2786833, at *8 (N.D. Ind. May 29, 2020) (citing ***Chase v. Astrue***, 458 Fed.Appx. 553, 556-57 (7th Cir. 2012); ***Ayala v. Berryhill***, 2018 WL 6696548, at *1 (N.D. Ill. Dec. 20, 2018).  While it is not the court's job determine whether Valerie R.'s disability determination was wrong, the court is responsible for determining whether the ALJ provided rational reasoning for her findings.  Here, the ALJ failed to do so, especially in evaluating the findings of Dr. Kennedy.

First, the ALJ explained that she gave Dr. Kennedy's findings little weight because the comments regarding the ability to remember, understand, sustain, persist, and interact with others was "best left for a mental health professional." (Tr. 17).  That analysis fails for two reasons. First medical doctors have training in mental health issues.  It is not always possible to separate physical and emotional problems.  Second, assuming that was a reasonable explanation for giving that aspect of Dr. Kennedy's opinion little weight, the ALJ did not maintain the same outlook when she evaluated the opinions of other doctors in this case.  The ALJ rejected Dr. Kennedy's opinion as to Valerie R.'s physical impairments because Dr. John T. Heroldt, a licensed psychologist, noted that she did not use a cane and her gait was normal during a Mental Status Examination that took place on February 15, 2017.  (Tr. 17, 409-411).  To remain consistent for the purpose of "building an accurate and logical bridge," the ALJ certainly should not have relied on a licensed psychologist's observations of Valerie R.'s physical limitations as a reason to reject the findings of Dr. Kennedy, a medical doctor.

Additionally, there were only medical records from two evaluations since August 2014:

8

the February 15, 2017 evaluation completed by Dr. Heroldt and the February 24, 2017 evaluation completed by Dr. Kennedy.  To reason that the record did not support Dr. Kennedy's physical findings because there were other records that stated she had a normal gait, strength, and sensation was not logical.  While there were prior records that found Valerie R. to have a normal gait, those records were from five sporadic evaluations between 2007 and 2014.

Lastly, in her effort to rationalize giving little weight to Dr. Kennedy's opinion, the ALJ stated that other evidence of record did not indicate that Valerie R. "had a regular and consistent impaired gait, strength or sensation, and the diagnostic testing reveal[ed] more of a mild to moderate findings and [she] never underwent surgery, injection therapy, or physical therapy." (Tr. 17).  While the ALJ was correct that there were no other findings of an impaired gait, strength or sensation, and testing revealed mild to moderate findings, those findings were sparce and at least three years older than Dr. Kennedy's.  Additionally, the ALJ's reasoning did not account for Dr. Kennedy's finding that Valerie R. could not perform fine and gross motor movements over a sustained basis and that her levels of pain could interfere with working.  (Tr. 417).  Finally, the ALJ's statement that Valerie R. never underwent physical therapy used to show the severity level of her conditions was misleading.  In a 2014 State Agency Disability Determination Exam, Dr. Phillip Boruff noted that Valerie R.'s treatment plan would consist of "spinal adjustments and therapies." (Tr. 368).

"As a general rule, an ALJ is not required to credit the agency's examination in the face of a contrary opinion from a later reviewer or other compelling evidence.  But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled … can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." ***Beardsley v. Colvin***, 758 F.3d 834, 839 (7th Cir. 2014). As discussed above, the ALJ did not provide a "good explanation" for the weight she assigned to Dr. Kennedy's opinion.

9

Valerie R. makes other arguments regarding her subjective symptoms and the RFC. However, because the ALJ gave little weight to Dr. Kennedy's opinion without providing logical reasoning, the court need not address the additional arguments at this time.  The ALJ will have the opportunity to revisit other issues on remand.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED.**

ENTERED this 3rd day of February, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge